**Clear Form**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
_____Eastern_____DIVISION

Ruth Spigner

    Plaintiff(s),

v.

Lear Corporation

Defendant(s).  (Enter above the full name(s)
of all defendants in this lawsuit. Please
attach additional sheets if necessary.)

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. _____
    (to be assigned by Clerk of District Court)


JURY TRIAL DEMANDED

    YES **X**    NO☐

**EMPLOYMENT DISCRIMINATION COMPLAINT**

1.    This employment discrimination lawsuit is based on (check only those that apply):

**X**    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, for employment discrimination on the basis of race, color, religion, gender, or national origin. **NOTE**: *In order to bring suit in federal district court under Title VII, you must first obtain a right-to-sue letter from the Equal Employment Opportunity Commission.*

**X**    Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, *et seq.*, for employment discrimination on the basis of age (age 40 or older). **NOTE**: *In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file charges with the Equal Employment Opportunity Commission.*

**X**    Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, *et seq.*, for employment discrimination on the basis of disability. **NOTE**: *In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a right-to-sue letter from the Equal Employment Opportunity Commission.*

_____ Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701, *et seq.*, for employment discrimination on the basis of a disability by an employer which constitutes a program or activity receiving federal financial assistance.

**NOTE**: *In order to bring suit in federal district court under the Rehabilitation Act of 1973, you must first file charges with the appropriate Equal Employment Office representative or agency.*

X _____ Other (Describe)

Discriminated against for being a heterosexual woman who filed a complaint versus a bisexual woman. The Defendant can be found with the UAW representative on camera laughing and saying all women are either bipolar or bisexual in reference to Plaintiff's sexual harassment report of the Defendant.

## PARTIES

2.     Plaintiff's name: Ruth Spigner

Plaintiff's address: 421 Savannah Circle
Street address or P.O. Box

O Fallon, Missouri 63368
City/ County/ State/Zip Code

636-442-1530
Area code and telephone number

3.     Defendant's name: Lear Corporation

Defendant's address: 301 Logistics Center Dr
Street address or P.O. Box

Wentzville, MO 63385
City/County/State/ Zip Code

(636) 332-8600
Area code and telephone number

**NOTE: IF THERE ARE ADDITIONAL PLAINTIFFS OR DEFENDANTS, PLEASE PROVIDE THEIR NAMES, ADDRESSES AND TELEPHONE NUMBERS ON A SEPARATE SHEET OF PAPER.**

2

4.      If you are claiming that the discriminatory conduct occurred at a different location, please provide the following information:

_____
(Street Address)                 (City/County)                (State)    (Zip Code)

5.      When did the discrimination occur?  Please give the date or time period:

## October 2024 - Termination Date of December 3, 2024
_____

### ADMINISTRATIVE PROCEDURES

6.      Did you file a charge of discrimination against the defendant(s) with the Missouri Commission on Human Rights?

**X** Yes       Date filed: _____

☐ No

7.      Did you file a charge of discrimination against the defendant(s) with the Equal Employment Opportunity Commission or other federal agency?

**X** Yes       Date filed: _____

☐ No

8.      Have you received a Notice of Right-to-Sue Letter?

**X** Yes                              ☐ No

If yes, please attach a copy of the letter to this complaint.

9.      If you are claiming age discrimination, check one of the following:

**X** 60 days or more have passed since I filed my charge of age discrimination with the Equal Employment Opportunity Commission.

_____ fewer than 60 days have passed since I filed my charge of age discrimination with the Equal Employment Opportunity Commission.

3

## <u>NATURE OF THE CASE</u>

10.  The conduct complained of in this lawsuit involves (check only those that apply):

        \_\_\_\_ failure to hire me

    X\_\_\_\_ termination of my employment

        \_\_\_\_ failure to promote me

        \_\_\_\_ failure to accommodate my disability

        \_\_\_\_ terms and conditions of my employment differ from those of similar employees

    X\_\_\_\_ retaliation

    X\_\_\_\_ harassment

        \_\_\_\_ other conduct (specify):
Sexual Harassment, Abuse of Process,
Intentional Infliction of Emotional Distress

Did you complain about this same conduct in your charge of discrimination?

    X☐ Yes                     ☐ No

11.    I believe that I was discriminated against because of my (check all that apply):

_____    race

_____    religion

_____    national origin

_____    color

X    gender

X    disability

X    age (birth year is:  1973    )

X    other:

Sexual Orientation

Did you state the same reason(s) in your charge of discrimination?

X    Yes                                    No

12.    State here, as briefly and clearly as possible, the essential facts of your claim. Describe specifically the conduct that you believe is discriminatory and describe how each defendant is involved in the conduct. Take time to organize your statement; you may use numbered paragraphs if you find it helpful.  It is not necessary to make legal arguments, or to cite cases or statutes.

Plaintiff has attached a full detailed Complaint attached with Statement of Facts Included. In short , Plaintiff got reported
sexual harassment from a former manager
over her and the Defendant is on Police body
camera conspiring with the UAW to find a way to terminate the Plaintiff after reporting
management for sexual harassment. The Defendant involved the former romantic
work partner of the Plaintiff in their scheme
to retaliate against the Plaintiff for "getting 5
people out and if we don't act she will get 5
more out. Clearly showing that the reasons the Defendant claimed was the reason
for termination of the Plaintiff was in their own
words "the hurdle they have to go through"
seeing as the Plaintiff was an FMLA covered worker who did not have a record at
Lear but instead positive feedback . Continued attached.

(Continue to page 6 if additional space is needed)

(Attach additional sheets as necessary).

13.    The acts set forth in paragraph 12 of this complaint:

**X**    are still being committed by the defendant.

    are no longer being committed by the defendant.

    may still be being committed by the defendant.

### REQUEST FOR RELIEF

State briefly and exactly what you want the Court to do for you.  Make no legal arguments;

cite no cases or statutes.

Grant maximum  damages allowed
by law, backpage and an injunction ordering
the Plaintiff to be restored to the employment
status prior to being terminated with health
insurance benefits.

14.    Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule

# Federal Rule of Civil Procedure 11

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 23 day of June , 20 26 .

Signature of Plaintiff _____

RUTH SPIGNER
421 Savannah Circle
OFallon, MO 63368
Tel: 636-442-1530
Ruthreon@gmail.com
Pro Se

United States District Eastern District of Missouri
**UNLIMITED JURISDICTION**

| | |
|---|---|
| Ruth Spigner, | **Complaint For** |
| Plaintiff, | Violation of Missouri Human Rights Act and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, et seq { Discrimination, |
| vs. | Retaliation , Sexual Harassment |
| Lear Corporation | Wrongful Termination } |
| | Conspiracy |
| Defendant | Intentional Infliction of Emotional Distress |

**Background**

Comes now Ruth Spigner ("Spigner "), an African American (black) female and resident of the State of Missouri sometimes referred to as Ruth or Spigner in this complaint , versus  the Defendant in this complaint versus, Lear Corporation, an automotive supplier that designs, engineers, manufactures, and supplies components and systems to major automakers.

Defendant operates a manufacturing facility in  Wentzville, Missouri.  The Wentzville plant supports manufacturing and assembly of automotive parts for OEM customers (e.g. Ford).

At all times relevant herein, Defendant has has had at least 500 employees across the nation and 6 employees in the State of Missouri.

1

Ruth Spigner vs Lear  Corporation

Defendant is an "employer" as defined by the Missouri Human Rights Act and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, et seq.

Plaintiff began her employment with Respondent on or about March 29, 2023, as an hourly Assembler. In this role, Plaintiff performed rotating production duties related to the assembly of automotive seating components.

Throughout her employment, Plaintiff performed her job to the best of her ability, met Defendant's legitimate expectations.

In approximately May 2024, Cadreckias Jones began working for Defendant . Shortly after Jones began working at Defendant, he initiated personal and flirtatious interactions with Plaintiff .

On one occasion in May 2024, while returning from a smoke break with other coworkers present, Jones continued engaging Plaintiff in unsolicited personal conversation. Jones approached Plaintiff and displayed a photograph of his father on his phone, asking whether Plaintiff found his father attractive and suggesting, in a joking but pointed manner, that he could arrange a romantic connection between them.

Plaintiff responded politely saying "Your dad is attractive but I'm not interested." Jones quickly responded saying, "I didn't want you for my dad anyway.  I wanted you for me."  Plaintiff laughed at Jones and told him he was a kid.  Plaintiff stated, "I bet you are my daughter's age."

2

Ruth Spigner vs Lear  Corporation

Jones minimized the age difference between them, telling Plaintiff that "Age ain't nothing but a number." Spigner walked way from the conversation.

However, at the end of the shift, Jones gave Spigner his telephone number.

Over the next several weeks Jones continued to engage in flirtatious conversation, and expressed personal interest beyond normal workplace interaction.

As part of his efforts to establish intimacy, Jones shared personal and sensitive background information with Plaintiff, including statements that he was bipolar and schizophrenic. Jones used these disclosures to foster emotional closeness and trust.

Jones' pursuit was successful.  Over the summer of 2024 Plaintiff and Jones began an intimate relationship.

In August 2024, Plaintiff encountered Jones carrying a backpack. During a brief, playful interaction, Plaintiff reached toward the back pocket of Jones's bag. Jones immediately reacted with alarm, forcefully pulling the bag away from her and stating words to the effect of, "Stop—there's a gun in my bag." Plaintiff did not see a gun but she felt a hard object inside the bag.

Plaintiff was startled by both Jones's reaction and his statement. Jones's demeanor was serious, not joking. Plaintiff immediately withdrew and did not touch the bag again.

3

By mid-October 2024, Plaintiff decided to end her relationship with Jones due to his jealousy. Jones had been closely monitoring Plaintiff's movements at work, questioned her interactions with coworkers, and reacted angrily to perceived attention she gave to others.

On October 7, 2024, when Plaintiff left work early, Jones confronted her later that evening, demanding to know where she had gone and why she had not told him. His tone was accusatory and controlling, reflecting jealousy rather than any legitimate workplace concern.

Jones's jealousy escalated further after he became aware that Plaintiff had purchased a small gift for a coworker's birthday later in October. Jones interpreted this as evidence that Spigner was involved with someone else and responded by angrily telling Plaintiff never to speak to him again, calling her derogatory names in the process. Plaintiff complied and did not initiate any further contact with Jones thereafter.

At the same time, Christy Walker—who socialized with Jones and shared connections with him outside of work—began exhibiting jealousy and hostility toward Plaintiff.

On Plaintiff's first day on second shift, Walker made a sexually explicit comment about Jones, signaling personal interest in him. She stated, "I want to see that dick." The comment was unsolicited, and inappropriate.

4

Ruth Spigner vs Lear  Corporation

Thereafter, Walker repeatedly commented on Plaintiff's body and appearance, including remarks about her legs and physical features, despite Spigner not encouraging such comments and finding them unwelcome.

After the breakup between Plaintiff and Jones, Walker increasingly involved herself in gossip about Plaintiff, discussed Plaintiff's personal life with others on the floor, and appeared to align herself with Jones.

Walker's conduct included inappropriate remarks about Plaintiff's body and clothing and participation in spreading rumors that inflamed tensions on the shift.

Together, Jones's possessive behavior and Walker's jealousy created an increasingly hostile and retaliatory work environment for Plaintiff following the end of the relationship.

On or about October 26, 2024, Plaintiff reported these concerns to Amy (LNU) Respondent's management.

On or about October 28, 2024, Plaintiff was called into the HR office. Spigner spoke to Lloyd Burton (HR), Will Gay (HR), Island (LNU) and Mike Grogan (Union Rep).

Plaintiff complained that her supervisor had made inappropriate comments of a sexual nature, was discussing her personal matters with coworkers, and had created a work environment that felt hostile and unsafe. Plaintiff requested intervention and protection from retaliation.

Burton assured Plaintiff there would be no retaliation.

5

Ruth Spigner vs Lear  Corporation

a. Though unrelated to her harassment claim, Plaintiff advised HR that Mac didn't steal OT.  Plaintiff explained that Walker approved the OT because Mac and Walker have a friendship outside of work.  Upon information and belief, Mac fixed Walker's dishwasher.

After Plaintiff was dismissed from the office, Janata Bennett was summoned. Bennett confirmed Walker's inappropriate comments and prior relationship with Mac.

Immediately after making these complaints, Plaintiff experienced retaliation. Information she shared with HR in confidence became widely known on the production floor. Coworkers referenced her complaints openly, and Plaintiff was subjected to hostility, isolation, and threats communicated through third parties.

On October 29, 2024, the day after Spigner's complaint about Walker, Jones made a complaint against Spigner. Upon information and belief, Jones alleged that Spigner harassed him.  The complaint is unfounded and clearly as result of retaliation due to Jones' friendship with Walker.

On November 1, 2024, Respondent removed Spigner from the production floor and placed her on suspension without providing a clear reason. Spigner believes it was due to Jones' complaint.

On November 4, 2024, Spigner returned to work, but the retaliation continued. Jones continued to involve himself in Spigner's work environment, including discussing her with coworkers. Spigner received reports that Jones was bragging to others about having caused her trouble at work.

6

Ruth Spigner vs Lear  Corporation

At the same time Spigner was blocking Jones' calls. Spigner was also ignoring pleas from co-workers to call Jones.

On or about November 5, 2024, Jones yelled at Plaintiff's friend on the production floor. Jones was frustrated that Plaintiff still had not called him. Jones screamed, "Tell your friend today is the mother-fucking-day." Jones tirade was reported to Plaintiff and Plaintiff perceived it was a threat of violence.

Within 24 hours, Plaintiff reported to Rowena George and Lloyd that she feared for her safety and that she was enduring ongoing retaliation. Spigner asked HR to instruct Jones to leave her alone. George essentially told Spigner that she was over-reacting.

On or about November 8, 2024, a co-worker reported to Plaintiff that Jones was bragging about causing Spigner trouble. Jones stated, "You know I gotta get your girl out of her." The friend responded, "I guess it hurts she came back after a few days."

After learning of Jones' admission that Jones is trying to get Plaintiff fired, Plaintiff reported retaliation to HR. Plaintiff stated that she feared for her safety because Jones may previously brought a firearm to work.

Within an hour Respondent involved law enforcement. Officers from the Wentzville police department arrived at the plant.

7

Ruth Spigner vs Lear Corporation

Before Spigner was questioned, Respondent's representatives repeatedly portrayed her to law enforcement as unreliable, vindictive, and the instigator of the situation, while simultaneously minimizing Jones's conduct and credibility concerns.

a. Lloyd Burton informed the police

i. we have a female employee that has alleged some issues with a guy she used to date here. His demeanor doesn't kind of match what she's seeing, but she came in today. She's told story after story, but now she said that he carries a gun on him, has a gun on him, so we're going to actually have her come up and repeat the story to you guys. So if it is false, we'll take action against that but it's not something we can turn a blind eye to.

ii. a little bit more back history. He's married. She's now coming to his house, threatened to tell his wife, so I think he's not going to be in the right state by the time this is all over with.

iii. even though he really hasn't been a problem, she's pushing his buttons, where it's just a matter of time.

iv. Because Jones' married with 4 kids he is trying to keep a low profile.  He's not out there doing what Spigner is insinuating because he wants her to go away.

v. Jones has dated another woman at the plant.

vi. She's the one driving this

vii. Because he is ignoring her, she just won't stop.

8

Ruth Spigner vs Lear  Corporation

Before conducting the investigation on Respondent's behalf, the police officer told Burton and George, "so it sounds like your policy is obviously not to have firearms on the floor. So for as far as that means for legal action from us, it is not necessarily illegal."

The police, Burton and Geroge then called Spigner into the office.  She stated:

i. The situation where Spigner touched/felt Jones' gun was a couple of months ago.

ii. That she believed that Jones consistently carries a gun.

iii. That she and Jones had relationship for about 5 months but she had spoken to him in more than a month

The police, Burton and George then called Jones into the office.  Jones stated he didn't know why someone would allege that he had a gun. In response, Burton stated, "There's no secret the situation we're all in, right?

So you can kind of guess who… So I know it's an unfortunate spot to be in. We're still going to keep working through it, but this is the hurdle we came through. I appreciate you"

 The police searched Jones' bag but Will Gay confirmed it was not the bag Spigner described to police.

The police also searched Jones' vehicle.  Though the vehicle did not have a gun, there were empty bottles of Jack Daniels whisky in the front passenger seat.

Before releasing Jones to return to the plant floor Burton told Jones:

Ruth Spigner vs Lear  Corporation

I'm aware of the moves that are trying to be made, but we got to, got to do it the right way, right? So you probably don't be frustrated before this is all done and said, but the truth will always be the truth, right? I just ask every time you sit at the table, keep telling the truth.

I appreciate you sharing what you shared. This isn't our first rodeo, but we cannot look like we're taking sides. I got to take everything until it wears itself out. I'm gonna send you back to work, right? You know, still have our numbers.

And again, like I said at any point, she crosses the line, right? We're going to take action when it's time, like, just keep doing the right thing as of now, right? And we'll go from there again. Like I said, what happens behind this door just stays.

The rumors are going to happen. But don't just, don't partake in it, right? And don't, don't engage with her as much as possible.

In a showing of solidarity for Jones, Geroge asked if Jones needed anything from Respondent.

Burton and Geroge shook Jones hand as he exited the room. He was told "Good to me you, Bro."

After the interview with Jones, Burton said to Grogan, "We're gonna hafta talk about her."

The police interviews with HR and Jones were caught on video, which is in Spigner's possession.

When Jones left the office, he informed everyone that Spigner called the police on him. This was blatantly untrue. Respondent's HR called the police. Nonethless, the false accusation had the intended effect – everyone stopped talking to Spigner.

10

Ruth Spigner vs Lear  Corporation

Despite no wrongdoing by Spigner, Respondent's actions further stigmatized her and reinforced the perception among coworkers that she was the problem, rather than the victim of harassment and retaliation.

On November 18, 2024, Respondent again suspended Spigner from the workplace. Management refused to provide a clear explanation for the suspension, despite Spigner's repeated requests and her continued insistence that she was being punished for reporting harassment and safety concerns.

During the suspension meeting, Signer stated, "They are harassing me.  Why am I being suspended?" Rowena George simply "You don't need to worry about that."

Spigner again said "I proved he is harassing him. I've shown you text messages telling him to leave me alone. I've shown you text message of me being nice to him."  Rowena George sarcastically stated, "You're just a regular Mother Theresa."

Spigner stated, "He (Jones) sent me a video of himself stroking his dick." Rowena George immediately demanded to see the video.  Spigner pulled up the video and handed it to George.

George watched video but ridiculously claimed she couldn't really see it.  Spigner said you can clearly see that it's him.

A snapshot of Jones' video is on Exhibit C  (Jones' penis has been redacted).

Spigner said, "I'm worried this is gonna get me fired." Rowena George pounded her chest and said, "You need to worry about me.  I'm the only person who can fire you."  Michael Grogan

11

Ruth Spigner vs Lear  Corporation

(Union Rep) was told to escort Spigner out of the building. Before leaving Spigner asked why Jones wasn't being suspended. No answer was given.

A few days later, Defendant's HR employees (Jason LNU, Lloyd Burton, Rowena George, Will Gay, Island LNU and Michael Grogan) called Spigner.

Rowena George asked Spigner about her sexual relationship with Larry Mosby. Larry Mosby has never worked for Defenfant.

Spigner and Mosby worked together at the GM site. Mosby had nothing to do with Lear. Spigner was also asked if she had sexual relationship with Percy Mitchell, an actual Lear employee. She stated "No" - they were only friends. Defendant then hung up on Spigner.

On December 3, 2024, Defendant terminated Spigner's employment. Defendant claimed that Spigner was terminated for allegedly failing to timely report a safety concern about Jones possibly having a gun at work.

This explanation was pretextual. Jones was not fired for possibly having a gun at work.

After Spigner's employment ended, Defendant continued to retaliate against Plaintiff.

On or about July 18, 2025, Plaintiff's son , obtained a copy of the November 8, 2024 police investigation.

12

Ruth Spigner vs Lear Corporation

A few days later, Plaintiff's son contacted Rowena George asking for the correct contact information to send moving papers.

Defendant's HR employee George, did not respond to Plaintiff's son's question.

A few days later, Plaintiff's son texted Defendant's HR employees Rowena George and Lloyd Burton a copy of the video.

On July 28, 2025, Defendant's employee Rowena George filed a Petition for Order of Protection in St. Louis County, Missouri.  It was designated case number 25SL-PNO3953.

On August 1, 2025, Plaintiff was served with a Summons for Full Order of Protection.  The matter was set to be heard on September 22, 2025.  Defendant's HR employee George did not attend the hearing and Spigner consented to the matter being dismissed.

The Petition for Order of Protection was frivolous.  Plaintiff had no contact or attempted contact with Defendant's HR employee Rowena George after her termination.

Defendant's HR employee Rowena George's abuse of process served its purpose.  On September 2, the Union withdrew Spigner's grievance which was set for arbitration on September 30, 2025.  The Union alleged that Plaintiff had inappropriate contact with Defendant's HR employee George.

Ruth Spigner vs Lear  Corporation

## Statement of Facts

1. Defendant's reason for Plaintiff's termination is pretext for retaliation.

2. Defendant's reason for filing Plaintiff's termination is pretext for retaliation.

3. Plaintiff's complaint of sexual harassment was a motivating factor in Respondent's decision to terminate Plaintiff's employment.

4. Plaintiff was subjected to unwelcome sexually offensive comments during the term of her employment with Defendant.

5. The harassment was sufficiently severe or pervasive such that it altered the terms and conditions of Plaintiff's employment and it created a hostile work environment.

6. Defendant knew or should have known of Jones' and Walker's harassment.

7. Defendant failed to take prompt and appropriate corrective action to stop or prevent the harassment.

8. Defendant conduct was outrageous and showed complete indifference to or conscious disregard for Spigner 's rights.

14

Ruth Spigner vs Lear  Corporation

9. Defendant's conduct is in violation of the Missouri Human Rights Act and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, et seq.

10. As a direct result of Defendant's conduct, Plaintiff has suffered damages, which include loss of wages and benefits, past and present, mental anguish, emotional distress, pain and suffering, a detrimental job record, career damage and diminished career potential, mental distress in the form of embarrassment humiliation, anxiety, loss of enjoyment of life, loss of sleep and other non-pecuniary losses, all of continuing and permanent nature.

**Memorandum of Points & Authorities**

15

Ruth Spigner vs Lear  Corporation

I declare under penalty of perjury of the federal laws of United States of America and the State of Missouri, that the foregoing is true.

Ruth Spigner

Plaintiff

Date:   June 23, 2026

16

Ruth Spigner vs Lear  Corporation

To Whom This May Concern,

On October 8, 2024, Christy Munson Walker walked over to Eddie on the floor 31X while he was in steam and told him I called the police on Cadrekias Jones and I'm crazy. Christy is causing a hostile work environment for me, for me constantly spreading rumors. She constantly tells people that I'm jealous of Drek of but I was the one giving him gifts and money to help support his family. I have the proof in my ApplePay. Drek is provoking texts from me by spreading rumors about me on the floor. The week of Oct 21-26, Drek was yelling at Granite to pass along messages to me. She did not because she knew I didn't want to hear it. Drek text me this message.

10-22
2:15 p.m.
    Drek: U a real sucker u still bought this nigga a gift u stupid mtf dont ever speak to me again

    Me: Thats for Devon! His bday is today and its not the stuff I bought you

Drek: U still a duck

Me: Hes like a son. Your really mean but its fine.

I Ruth Spigner have not spoken to Drek since that day but I have sent friendly texts for him to stop lying about me to everyone on the floor. Telling coworkers that I want to fuck Eddie. Telling Christy my personal business and both of them are now spreading lies after finding out I went to HR Drek has cursed me out on texts saying he knows I want to fuck Eddie. I am the one being harrassed because I wouldn't take him back. He would no longer get gifts or money and thought I would be that kind to Eddie. Drek has mental issues. He's bipolar and schizophrenic. He has multiple personalities and I ignore him. I have sent angry messages to him sometimes because his making people come to me with lies hes spreading. Christy also tells people on 610 line everything thats going on because one girl came to Eddie and told him. Eddie says he dont want to be questioned or be in the middle of this. I also have texts from Drek but did not keep all from him begging me to take him back. I told him to focus on his family.

I need the retaliaty from Christy and Drek running their mouth to stop today

11/11/2024

#3910 Ruth Spigner Ter...

11/11/2024

Christy has told me everyday since I came to 2nd shift 8/19/2024 that she wants to FUCK Eddie. I was tired of hearing her look for anyone who has his dick picture or her commenting on my legs. In my opinion, she gives or bisexual comments, every single day I wore shorts. It was too unprofessional so I blocked her from my phone 10-10-2024 on a thursday night after she called me while I was home. She gossips about everyone on line and I had had enough. She gave Greek a fake bereavement so he and his girlfriend could go to Bolivar TN, to pick up their house furniture without him getting pointed months ago. Christy told me she tried to get a 1st shift supervisor fired because she needed 1st shift before her marriage ends. It's a disgrace in my opinion to all supervisors contacting a lot of dear employees outside of work to gossip and start confusion.

I am tired of the harrassment from them both. Retaliation has been stressful and messing with my mental health.

Sincerely

Ruth Spigner

11/11/2024  10:15 a.m



